Jeremy T. Bergstrom, Esq.
Arizona Bar No. 19399
MILES, BAUER, BERGSTROM & WINTERS, LLP
2200 Paseo Verde Pkwy., Suite 250
Henderson, NV 89052
(702) 369-5960 / FAX (702) 369-4955
File No. 10-92856

Attorneys for Secured Creditor,
BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| DOMINIC J SANSALONE AND PATRICIA J SANSALONE, | Case No.: 2:10-bk-15291-GBN |
| Debtors | |
| BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, | |
| Movant, | |
| vs. | |
| DOMINIC J SANSALONE AND PATRICIA J SANSALONE, Debtor; JILL H. FORD, Trustee, | |
| Respondents. | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS

SERVICING, LP, its assignees and/or successor in interest ("Secured Creditor" herein), moves

this Court for an Order terminating the Automatic Stay so that Secured Creditor (and its Trustee)

may commence and continue all acts necessary to foreclose under the Deed of Trust secured by

Debtors' property, generally described as **160 Cascade Drive, Henderson, NV 89074**

("Property" herein).

1

1       There is currently a second Trust Deed upon the Property in favor of and/or serviced by

2  BAC HOME LOANS SERVICING, securing a Promissory Note in an unknown original

3  amount.  The present unpaid principal balance of said Note is $27,114.00 as listed on Schedule

4  D-Creditors Holding Secured Claims of the Debtors' Schedules.  Attached hereto as Exhibit "A"

5  is a copy of Schedule D-Creditors Holding Secured Claims of the Debtors' Schedules.  Secured

6  Creditor will seek leave of Court to specify the amount of delinquency thereon at the time of

7  Hearing.

8       In the event Secured Creditor obtains title to the property at its foreclosure sale, Secured

9  Creditor will incur substantial fees and costs in reselling the Property.  Based on past experience

10  of the Secured Creditor, the additional cost is a minimum of eight to ten percent.  This cost is

11  primarily commission fees on resale, and title and closing costs.  Further, it is typical to incur

12  further expense for putting the property in marketable condition.

13       Secured Creditor alleges the value of the Property to be approximately $192,000.00 based

14  upon Schedule A-Real Property of the Debtors' Schedules.  Attached hereto as Exhibit "B" is a

15  copy of Schedule A-Real Property of the Debtors' Schedules.  Secured Creditor requests that the

16  Court take Judicial Notice, pursuant to Federal Rules of Evidence Rule 201, of the attached

17  Exhibit as to the issue of value of the subject Property.

18       Secured Creditor alleges that there appears to be no/insufficient equity with respect to the

19  subject Property, that Secured Creditor is not adequately protected, that the Property is not

20  necessary for an effective reorganization, and that cause exists, in that Secured Creditor is not

21  receiving its regular monthly payments, and/or that it would be unfair and inequitable to delay

22  Secured Creditor in the foreclosure of Secured Creditor's interest in the subject Property.  11

23  U.S.C. Section 362(d).

24

1  Secured Creditor is also entitled to attorney's fees and costs under the Note and Deed of

2  Trust securing Secured Creditor's claim, or alternatively under 11 U.S.C. 506(b) and such other

3  relief as the Court deems just and proper.

4

5  ## MEMORANDUM OF POINTS AND AUTHORITIES

6  ## STATEMENT OF FACTS

7  ### I

8  This Secured Creditor is the servicer and/or beneficiary of a Promissory Note dated

9  October 14, 2004, in the principal amount of $216,000.00, which is secured by the above-

10  referenced Deed of Trust.  Copies of said Note, Deed of Trust, and Assignment of Deed of trust

11  are attached hereto as Exhibits "C" "D" and "E" and by this reference incorporated herein.

12  On or about May 18, 2010, Debtors commenced the current Chapter 7 Bankruptcy

13  proceeding in this Court.

14  The Debtors' total arrearages are broken down on the Supplemental Declaration by the

15  Secured Creditor on file herein.

16  Secured Creditor has elected to initiate foreclosure proceedings on the subject property

17  with respect to the subject Trust Deed, and a Notice of Default and Election to Sell was recorded

18  on March 31, 2010.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

3

## SECURED CREDITOR IS ENTITLED
## TO RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. SECTION 362(d)(2)

## II

11 U.S.C. Section 362(d) provides:

" (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --

> (2) with respect to a stay of an act against property under subsection (a) of this section, if-

>> (A) the debtor does not have an equity in such property; and

>> (B) such property is not necessary to an effective reorganization..."

Subsection (2) of 11 U.S.C. Section 362(d) allows the court to grant relief from the automatic stay if the debtor does not have equity in the subject property and if the subject property is not necessary to an effective reorganization. In In re San Clemente Estates, 5 B.R. 605 (S.D. Cal. 1980), the court stated that:

"Section 362(d)(2) reflects Congressional intent to allow creditors to immediately proceed against the property where the debtor has no equity and it is unnecessary to the reorganization, even where the debtor can provide adequate protection under Section 362(d)(1)." (Emphasis added.)

Id. 5 B.R. at 610.

In re Mikole Developers, Inc., 14 B.R. 524 (1981), involved a claim for relief under 11 U.S.C. Section 362(d)(2). The court stated that in determining whether equity exists in the subject property, all encumbrances are totaled, whether or not all the lienholders have joined in the request for relief from stay. Id. at 525. The Ninth Circuit has concurred in this view in Stewart v. Gurley, 745 F.2d 1194 (9th Cir. 1984); see also In re Mellor, 734 F.2d 1396 (9th Cir.

4

1984).  An appropriate cost of sale factor should also be added to determine if the debtor has any equity in the property.  <u>La Jolla Mortgage Fund v. Rancho El Cajon Associates</u>, 18 B.R. 283,289 (Bankr. S.D. CA 1982).

In the present case, the Debtor has little or no equity in the Property, as evidenced by the approximate market value compared to the total liens against the Property, principally that of Secured Creditor herein.

**<u>THE DEBTOR HAS THE BURDEN OF SHOWING THAT
THE PROPERTY IS NECESSARY TO AN EFFECTIVE
REORGANIZATION, AND ABSENT SUCH A SHOWING
RELIEF FROM STAY SHOULD BE GRANTED</u>**

**III**

A creditor is entitled to relief from the automatic stay under Section 362(d)(2) unless the debtor has met the burden of establishing that the property is "necessary to an effective reorganization." Section 362(g)(1) and (2) of the Bankruptcy Code, see <u>In re Roselli</u>, 10 B.R. 665 (Bankr. PA 1981).

"Effective" reorganization means that there must exist a reasonable possibility of such a successful reorganization or rehabilitation.  <u>In re Vieland</u>, 41 B.R. 134, 142 (Bankr. Ohio 1984). Since this is a Chapter 7 case, there clearly can be no effective reorganization.  Therefore, relief from stay should be granted.

///

///

///

///

///

///

///

5

1    WHEREFORE, Secured Creditor prays judgment as follows:

2    (1)    For an Order granting relief from Automatic Stay, permitting Secured Creditor to

3    move ahead with Foreclosure proceedings under Secured Creditor's Trust Deed, and to sell the

4    subject Property at a Trustee's Sale under the items of said Trust Deed including necessary

5    action to obtain possession of the Property.

6    (2)    For an Order waiving the 14-day stay provided by Bankruptcy Rule 4001(a)(3).

7    (3)    For an Order binding and effective despite any conversion of this bankruptcy case.

8    (4)    For such other relief as this Court deems appropriate.

9                          MILES, BAUER, BERGSTROM & WINTERS, LLP

10   Dated:    December 1, 2010          By:    /s/ Jeremy T. Bergstrom, Esq.
                                                Jeremy T. Bergstrom, Esq.
11                                              Attorney for Secured Creditor

12   10-92856/azmrs.dot/mld

13

14

15

16

17

18

19

20

21

22

23

24

6

# Exhibit A

In re    **DOMINIC J SANSALONE,**            Case No. _____
         **PATRICIA J SANSALONE,**

_____
Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

    State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

    List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

    If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

    Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No. **BAC HOME LOAN SERVICING** P. O. Box 10219 Van Nuys, CA 91410-0219 | | | | C | **Second Mortgage** **Single family residence rental property located at 160 Cascade Drive, Henderson, NV** Value $     192,000.00 | | | | 27,114.00 | 27,114.00 |
| Account No. 2712449822 **CITIBANK** P. O. Box 790114 Saint Louis, MO 63179-0114 | | | | C | **Second Mortgage** **Single family residence located at 10533 West Meade Drive, Sun City, AZ 85351** Value $     154,500.00 | | | | 49,129.00 | 49,129.00 |
| Account No. 0201809811 **GREENPOINT MORTGAGE** P. O. Box 79363 City of Industry, CA 91716 | | | | C | **First Mortgage** **Single family residence rental property located at 160 Cascade Drive, Henderson, NV** Value $     192,000.00 | | | | 213,256.00 | 21,256.00 |
| Account No. 742-99995 **MERRILL LYNCH** 4860 Deer Lane Drive East Jacksonville, FL 32246 | | | | C | **First Mortgage** **Single family residence located at 10533 West Meade Drive, Sun City, AZ 85351** Value $     154,500.00 | | | | 185,430.00 | 30,930.00 |
| **1**    continuation sheets attached | | | | | Subtotal (Total of this page) | | | | 474,929.00 | 128,429.00 |

B6D (Official Form 6D) (12/07) - Cont.

In re **DOMINIC J SANSALONE,**
    **PATRICIA J SANSALONE**

Case No. _____

_____
Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | | |
| Account No. R11997 | | | | Deed of Trust | | | | | |
| **TAHOE SEASONS** P. O. Box 3620 Laguna Hills, CA 92654 | | C | | Time Share with Tahoe Seasons | | | | | |
| | | | | Value $      5,000.00 | | | | 3,490.00 | 0.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| | | | | Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | 3,490.00 | 0.00 |
| Total (Report on Summary of Schedules) | 478,419.00 | 128,429.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com
Best Case Bankruptcy

# Exhibit B

In re    **DOMINIC J SANSALONE,**
           **PATRICIA J SANSALONE**                             Case No._____

                                          Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Single family residence located at 10533 West Meade Drive, Sun City, AZ 85351 | Fee Simple | C | 154,500.00 | 234,559.00 |
| Single family residence rental property located at 160 Cascade Drive, Henderson, NV | Fee Simple | C | 192,000.00 | 240,370.00 |
| Time Share with Tahoe Seasons | Deed of Trust | C | 5,000.00 | 3,490.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 351,500.00 | (Total of this page) |
| Total > | 351,500.00 | |
| | (Report also on Summary of Schedules) | |

  **0**   continuation sheets attached to the Schedule of Real Property

# Exhibit C

# ADJUSTABLE RATE NOTE

## (LIBOR Six-Month Index (As Posted By The Wall Street Journal) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| October 14, 2004 | Las Vegas | NEVADA |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

**160 Cascade Drive, Henderson, NV 89074**
*[Property Address]*

**1.      BORROWER'S PROMISE TO PAY**

    In return for a loan that I have received, I promise to pay U.S. $216,000.00 (this amount is called "Principal "), plus interest, to the order of Lender. Lender is GreenPoint Mortgage Funding, Inc..
I will make all payments under this Note in the form of cash, check or money order.

    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.      INTEREST**

    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.250%. The interest rate I will pay may change in accordance with Section 4 of this Note.

    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.      PAYMENTS**

    **(A) Time and Place of Payments**

    I will pay a monthly payment of accrued interest only for the first 36 months of this loan by making a payment every month. Beginning with the 37th month, I will pay principal and interest by making a payment every month thereafter.

    I will make my monthly payments on the first day of each month beginning on December, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date. "

    I will make my monthly payments at **P.O. Box 79363, City of Industry, CA 91716-9363** or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**

    Each of my initial monthly payments will be in the amount of U.S. $945.00. This amount may change.

    **(C) Monthly Payment Changes**

    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

THIS IS CERTIFIED TO BE A
TRUE AND CORRECT COPY
OF THE ORIGINAL
Fidelity National Title Agency of Nevada, Inc.

By _____

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **November, 2007**, and on that day every 6 months thereafter. Each date on which my interest rate could change is called a "Change Date. "

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published by the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  **Two and 750/1000ths** percentage points (**2.750%** ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.250%** or less than **2.750%**.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and 00/1000ths** percentage point(s) (**1.000%** ) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **11.250%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any questions I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment. " When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayment. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest.  If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b ) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security



Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Dominic J Sansalone_ (Seal)
Dominic J Sansalone -Borrower

_Patricia J Sansalone_ (Seal)
Patricia J Sansalone -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

# PREPAYMENT FEE ALLONGE

This Prepayment Fee Allonge ("Allonge") is made this **14th** day of **October, 2004,** and is incorporated into and intended to form a part of the Note dated the same date as this Allonge and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled **Borrower's Right to Prepay** is amended to read in its entirety as follows:

### BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If I make a full Prepayment within **3** year(s) of the date of this Note, I agree to pay the Note Holder a Prepayment fee. The Prepayment fee I will pay shall be an amount equal to six (6) months advance interest on the amount of the Prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the Prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the 3rd anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

No prepayment penalty will be assessed for any prepayment if prepayment is concurrent with the sale of the property securing this Note.

As used in this Prepayment Fee Allonge, the term full Prepayment shall mean and include the aggregate Prepayments made within any consecutive twelve-month period which exceed 20% of the original principal amount stated in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Dominic J Sansalone                -Borrower

_____ (Seal)
Patricia J Sansalone               -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

Prepayment Fee Allonge (Standard-Multistate)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 1

03121MU 11/00
©2000, The Compliance Source, Inc.

**Exhibit D**

Assessor's Parcel No.: 177-13-114-038

After recording please return to:

GreenPoint Mortgage Funding, Inc.
[Company Name]


[Name of Natural Person]

981 Airway Court, Suite E
[Street Address]

Santa Rosa, CA, 95403-2049
[City, State Zip Code]



```
20041026-0006041
```

Fee: $33.00
N/C Fee: $25 30

10/26/2004          15:16:14
T20040120575
Requestor:
    FIDELITY NATIONAL TITLE

**Frances Deane**          KGP
**Clark County Recorder**   Pgs: 20

Until a change is requested, all tax statements
shall be sent to the following address:

Dominic J Sansalone
[Name]

160 Cascade Drive
[Street Address]

Henderson, NV 89074
[City, State Zip Code]

——————————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated **October 14, 2004**, together with all Riders to this document.

**(B)** **"Borrower"** is **Dominic J Sansalone and Patricia J Sansalone, Husband And Wife**

Borrower is the trustor under this Security Instrument.

Nevada Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3029 01/01
— THE COMPLIANCE SOURCE, INC.—                                  1438INV 01/01
www.compliancesource.com          Page 1 of 15          ©2000, The Compliance Source, Inc.



**(C)** "Lender" is GreenPoint Mortgage Funding, Inc..
Lender is a **Corporation** organized and existing under the laws of the State of New York. Lender's address is **100 Wood Hollow Drive, Novato, CA 94945.**

**(D)** "Trustee" is **Marin Conveyancing Corp..**

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated **October 14, 2004.**
The Note states that Borrower owes Lender **Two Hundred Sixteen Thousand and 00/100ths** Dollars (U.S. $216,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2034.**

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) *[specify]* | | |

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "Escrow Items" means those items that are described in Section 3.

Nevada Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 2 of 15

MERS Modified Form 3029 01/01
1430INV 08/01
©2000, The Compliance Source, Inc.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **Clark:**
   *[Type of Recording Jurisdiction]*        *[Name of Recording Jurisdiction]*
**Lot 79 in Block 2 of Windham Hill Estates Unit No. 3, as shown by map thereof on file in Book 38 of Plats, Page 22 in the Office of the County Recorder of Clark County, Nevada.**

which currently has the address of **160 Cascade Drive**
                            *[Street]*
**Henderson**               **, Nevada 89074**               ("Property Address"):
      *[City]*                     *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right

option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. 0.00

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____
Printed Name          [Please Complete]

_____

_____
Printed Name          [Please Complete]

_____ [Acknowledgment on Following Page]

*Dominic J Sansalone* (Seal)
**Dominic J Sansalone** -Borrower
[Printed Name]

*Patricia J Sansalone* (Seal)
**Patricia J Sansalone** -Borrower
[Printed Name]

_____ (Seal)
-Borrower
[Printed Name]

_____ (Seal)
-Borrower
[Printed Name]

State of Nevada
County of Clark

§
§
§

Before me the undersigned authority, on this day personally appeared **Dominic J Sansalone and Patricia J Sansalone** known to me (or proved to me through an identity card or other document) to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal on this 20ᵗʰ day of October 2021

(Seal)

Carina Sanchez

Notary Public Carina Sanchez *[Printed Name]*
My Commission Expires: 6/9/07



Nevada Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3029 01/01
THE COMPLIANCE SOURCE, INC.—                                    Page 15 of 15                                 14301NV 08/00
www.compliancesource.com                                                                        ©2000, The Compliance Source, Inc

# EXHIBIT "E"

Inst #: 201011020002947
Fees: $14.00
N/C Fee: $25.00
11/02/2010 11:51:44 AM
Receipt #: 563360
Requestor:
MILES, BAUER, BERGSTROM & W
Recorded By: KXC  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded, mail to:
BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING, LP
400 National Way, Mail Stop SV-46
Simi Valley, CA 93065

File Number: 10-92856
Loan Number: ****5215
APN:177-13-114-038

## ASSIGNMENT OF DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS That **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS, INC.)** as Beneficiary under that certain **DEED OF TRUST** executed by

**DOMINIC J SANSALONE AND PATRICIA J SANSALONE, HUSBAND AND WIFE,** As Trustor

To **MARIN CONVEYANCING CORP**

On the 14th day of October, 2004 under Filing No. 20040120575 of the Records of Clark County, State of Nevada, given to secure the payment of a promissory note for the sum of **Two Hundred Sixteen Thousand and 0/100 Dollars ($216,000.00)** and interest, has endorsed said Note and does hereby **ASSIGN AND TRANSFER** to

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP**

all right, title and interest in said Note and all rights accrued under said Deed of Trust and all indebtedness secured thereby. The said Deed of Trust covers real property situated in said County and State described as follows:

"LOT 79 IN BLOCK 2 OF WINDHAM HILL ESTATES UNIT NO. 3, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 38 OF PLATS, PAGE 22 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA"

IN WITNESS WHEREOF said Assignor has caused this instrument to be signed and attested by its corporate seal on 10-27-10

MERS INC. AS NOMINEE FOR ORIGINAL LENDER
GREENPOINT MORTGAGE FUNDING, INC.

By: _____
 - AGENT

Michelle Reinhard
Certifying Officer

State of California
County of Los Angeles

On OCT 2 8 2010 before me, Ardel M. Ciancio personally appeared Michelle Reinhard personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person(s) or the entity upon behalf of which is the person(s) acted, executed the instrument. I Certify under PENALTY OR PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

_____
(Seal)

ARDEL M. CIANCIO
Commission # 1790852
Notary Public - California
San Bernardino County
My Comm. Expires Feb 8, 2012